UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PARK McKINNON and BRYCE BARBER,<br><br>      Plaintiffs,<br><br>      v.<br><br>YUM! BRANDS, INC., TACO BELL CORP., ES-O-EN CORP., VALARIE MARTINEZ and Does 1–10,<br><br>      Defendants. | Case No. 1:15-cv-00286-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Defendants' Motion for Summary Judgment (Dkt. 33) and objections by both parties as to evidence offered for summary judgment (Dkts. 36-18, 42). The Court heard oral argument on the motion on March 15, 2017 and took the matter under advisement. For the reasons explained below, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment.

**BACKGROUND**

**1.    Factual Background[1]**

This case arises out of alleged racial discrimination at a Taco Bell Restaurant in Boise, Idaho. Defendant YUM! Brands, Inc. is a corporation that owns the "Taco Bell" brand and trademark. *Compl.* ¶ 7. Defendant Taco Bell Corporation (Taco Bell) is a wholly owned subsidiary of YUM! Brands, Inc. (YUM). *Hansford Dec.* ¶ 11, Dkt. 33-8. ES-O-EN, Corp., is a Taco Bell franchisee that owns and operates the Taco Bell restaurant located at 7070 Overland Road in Boise ("Subject Restaurant"), as well as several other Taco Bell Restaurants in Idaho, Oregon, and Utah. *Hansford Dec.* ¶¶ 3–4, Dkt. 33-8.

On April 30, 2015, Plaintiffs McKinnon, of South Korean descent, and Barber, of Hispanic descent, along with five other Caucasian members of the Army National Guard went to the Subject Restaurant. *McKinnon Dep.* at 20:25–22:1, 64:6–71:9, 52:7–55:24, Dkt. 33-6. Plaintiffs and four members of their group ordered food from Martinez, a cashier at the Subject Restaurant. *Martinez Dep.* at 9:6–23, 40:3–8, Dkt. 33-4; *McKinnon Dep.* at 20:25–21:12, 77:1–17, Dkt. 33-6. All of the Guardsmen were dressed in the same style military uniform. *Monroe Dec.* ¶ 3, Dkt. 36-14.

---

[1] The facts in this section are undisputed and material to the resolution of this case. Where material facts are in dispute, the Court has included the Plaintiffs' versions of the facts, insofar as that version is not contradicted by clear documentary evidence in the record.

The first member of the group to order was Monroe, who is Caucasian. *McKinnon Dep.* at 78:14–79:7, Dkt. 33-6.  The cash registers at the Subject Restaurant include a button labelled "Police Officer" that provides a 50% discount on the current order. *Martinez Dep.* at 19:17–20, Dkt. 33-4. Martinez gave Monroe a 50% discount, even though he did not ask for it. *Monroe Dec.* ¶¶ 5–7, Dkt. 36-14. The next two members to order were McKinnon and Barber. *McKinnon Dep.* at 78:14–79:7, Dkt. 33-6. Martinez did not give the discount to either McKinnon or Barber. *Martinez Dep.* at 39:19–25, Dkt. 33-4. The next three members to order were Caucasian. *McKinnon Dep.* 78:14–79:7, Dkt. 33-6. All three of these Guardsmen testify that they did not ask for the discount but received it anyway. *See Lewis Dec.* ¶¶ 6–7, Dkt. 36-15; *Emmons Dec.* ¶¶ 6–7, Dkt. 36-16.

Shortly after ordering their meals, the group discovered that the four Caucasian members received a 50% discount, but the two minority members did not. *Barber Dep.* at 51:2–52:23, Dkt. 33-7. McKinnon returned to the counter to ask Martinez why he had not received the discount. *Id.* at 54:1–24.   Martinez informed him that she could only apply the discount if someone asked for it. *Martinez Dep.* at 43:20–25, Dkt. 33-4. She told McKinnon that she could get her manager, Daley, and see if he could provide a refund or free food items. *Id.*

The Plaintiffs requested to see the manager. *Martinez Dep.* at 44:3–6, Dkt. 33-4. After discussing the issue with the Plaintiffs, Daley apologized and offered to refund their food. *Id.* at 33:3–5. The Plaintiffs refused the offer and left the Subject Restaurant. *McKinnon Dep.* 102:11–107:24, 110:1–6, Dkt. 33-6. Plaintiffs filed suit against the

Defendants and asserted claims alleging discrimination in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000a.

## LEGAL STANDARD

### 1. Motion for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable

inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.*

## 2. Legal Standard for § 1981

In relevant part, 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981(a) (2012). Courts apply a burden-shifting analysis for racial discrimination cases under § 1981. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03. Under *McDonnell Douglas*, if the plaintiff satisfies the initial burden of establishing a prima facie case of racial discrimination, the burden shifts to the defendant to prove it had a legitimate, non-discriminatory reason for the adverse action. *Id.* at 802. If the defendant meets that burden, the plaintiff must show that the reason was merely a pretext for discrimination. *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a prima facie case of racial discrimination under § 1981, a plaintiff must establish three elements: (1) he is a member of a protected class, (2) he attempted to contract for certain services, and (3) he was denied the right to contract for those services. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138 (9th Cir. 2006). The proof required to establish a prima facie case is "minimal" and does not "rise to the level of preponderance of the evidence." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

## 3. Legal Standard for § 2000a

In relevant part, 42 U.S.C. § 2000a provides "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and

accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000(a) (2012). The same *McDonnell Douglas* burden-shifting framework applies to § 2000(a) cases. *See, e.g., Ezell v. Edwards Theatres, Inc*., No. 104-CV-6533-SMS, 2006 WL 3782698, at *13 (E.D. Cal. Dec. 21, 2006).

A plaintiff may establish a prima facie case under § 2000(a) by establishing four elements: (1) he is a member of a protected class; (2) he attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) he was denied those benefits and enjoyment; and (4) such services were available to similarly-situated persons outside the protected class who received full benefits or enjoyment, or were treated better. *See McCoy v. Homestead Studio Suites Hotels*, 390 F. Supp. 2d 557 (S.D. Tex. 2005).

## ANALYSIS

### 1.    Claims under § 1981

The Defendants argue that Plaintiffs fail to establish a prime facie case under § 1981 because the Plaintiffs paid for and enjoyed their meals and they were not entitled to a discount. In addition, Defendants argue that even if Plaintiffs did establish a prima facie case, there was a non-discriminatory reason for the Defendants' actions. For the reasons below, the Court finds that there is a genuine dispute as to both issues and denies summary judgment on this claim.

A.    *Prima Facie Case*

To establish their prima facie case under § 1981, Plaintiffs must prove three elements: (1) they are a member of a protected class, (2) they attempted to contract for certain services, and (3) they were denied the right to contract for those services. *Lindsey*, 447 F.3d at 1138.

There is sufficient evidence for a jury to find that a prima facie case of discrimination exists. The first and second elements are undisputedly established. First, it is undisputed that both Plaintiffs are members of a protected class. McKinnon identifies as South Korean and Barber identifies as Hispanic. Second, both Plaintiffs did attempt to contract for the purchase of food and did ultimately contract for the purchase of food.

As for the third element, Plaintiffs must establish that the Defendants denied them the right to contract for those services. "While the outright denial of services is certainly a sufficient basis for finding a § 1981 violation, it is not a necessary condition under the statutory scheme Congress outlined in the Civil Rights Act of 1991." *Allen v. U.S. Bancorp*, 264 F. Supp. 2d 945, 949 (D. Or. 2003). When enacting the Civil Rights Act of 1991, Congress expanded the phrase "make and enforce contracts" to "embrace all phases and incidents of the contractual relationship . . . ." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298 (1994). The statute now defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (1991).

The price of a product, as modified by a discount or otherwise, is undoubtedly a contractual "term" or "condition." Here, Martinez did not apply the "Police Officer" discount to Plaintiffs' meals, a discount that she freely offered to their white peers. Rather, Plaintiffs were required to return to the counter to request the discount, thereby suffering inferior "terms and conditions" of their contractual relationship.

This case is distinguishable from *Sherman v. Marriott Hotel Servs., Inc.*, 317 F. Supp. 2d 609 (D. Md. 2004) on three grounds. First, the court in *Sherman* acknowledged that the prima facie elements in the retail and restaurant environments are different from the hotel context. *Id.* at 614. Second, the *Sherman* court concluded that all guests were subject to the same rule with common-sense exceptions. *Id.* at 615, n. 3 (explaining common sense exception to lock-out policy where a well-known guest in pajamas steps out to get paper and door slams closed behind them). In contrast, here, Plaintiffs had to ask for the discount and the Caucasian members did not. Defendants have not alleged that a unwritten exception to a blanket rule justified the disparate treatment. Third, in *Sherman*, the white and black patrons were not similarly situated in all relevant aspects as to give rise to an inference of racial discrimination. Here, the service members were similarly situated in most relevant aspects, except for race.

The Defendants also cite *Stucky v. Wal-Mart Stores, Inc.*, 2005 WL 2008493, at *8 (W.D.N.Y. Aug. 22, 2005), which concerned a store refusing a black woman's check because of a general policy to refuse checks without a printed address. Here, a reasonable jury could find that the Subject Restaurant had a general policy to give the "Police

Discount" to military members. Defendants argue that the discount does not apply to the Plaintiffs because "the discount policy applied only to police officers." *Meister Aff.* ¶ 3, Dkt. 33-9. However, there is sufficient evidence to create a material dispute as to whether the store's unwritten, general practice was to give military members the 50% discount. *See Daley Dep.* at 10:2–11:16, Dkt. 33-5. Daley himself understood the discount to apply to military members at all ES-O-EN-owned restaurants. *Id.* at 11:12–16, 25:20–26:18. Moreover, Martinez applied the discount to the Caucasian servicemen who accompanied Plaintiffs.

It is also immaterial that the Plaintiffs were later offered the same terms and conditions. The Defendants cite several cases where the court denied § 1981 relief where a plaintiff refused to accept a discount offered after some alleged discrimination. *See, e.g., Bagley v. Ameritech Corp.*, 220 F.3d 518 (7th Cir. 2000); *Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009); *Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003). However, in each of those cases, the discount was offered before the customer entered into any contract. Here, in contrast, Plaintiffs were not offered the discount until *after* the contractual relationship was formed. They had already purchased their food, returned to the counter, and asked to see the store manager by the time the discount was offered. Thus, they were denied the right to the same contracted-for experience as their peers.

Adopting the theory that efforts to remedy past discrimination—such as a discount or benefit offered after a contract has been formed—serve as a defense to liability under § 1981 would severely undercut the statute's protections. Under such a scheme, store

employees would be free to discriminate with relative impunity, safe in the knowledge that post-hoc customer service efforts could defeat a customer's legal claim.

The purpose of § 1981 is to ensure the ability to contract on an equal basis with the same "benefits, privileges, terms, and conditions of the contractual relationship" as someone similarly situated. Here, as demonstrated above, there is a material dispute about whether Plaintiffs were afforded the same contractual terms and conditions as their peers. Accordingly, Plaintiffs have sufficiently established their prima facie claim under § 1981.

**B.** *Non-Discriminatory Purpose*

Because Plaintiffs have established their prima facie case, the burden shifts to Defendants to prove they had a legitimate, non-discriminatory reason for the adverse action. Defendants allege that Martinez made a mistake in the application of the discount. *Daley Dep.* at 37:4–11, Dkt. 36-3. This proffered explanation for Martinez' failure to offer the discount to Plaintiffs constitutes a legitimate, non-discriminatory reason for her actions.

Plaintiffs argue that the only evidence offered to demonstrate that Martinez made a mistake constitutes inadmissible hearsay. Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Generally, hearsay is inadmissible unless it falls within the definition of non-hearsay, under Federal Rule of Evidence 801(d), or within a hearsay exception under Rules 803, 804, or 807. *See* Fed. R. Evid. 802. In ruling

on a motion for summary judgment, the Court may only consider evidence that would be admissible at trial. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c). However, the Court may consider inadmissible evidence as long as the contents of the evidence could be presented in admissible form at trial. *Id.* Here, Martinez could testify at trail as to her alleged mistake. Her direct testimony—insofar as it falls outside the definition of hearsay—would be admissible at trial. Moreover, hearsay testimony about statements allegedly made by Martinez to her supervisor would be admissible under the opposing-party statement exception to the general hearsay ban. Fed. R. Evid. 801(d)(2)(A). Therefore, the Court may consider the hearsay evidence at summary judgment stage.

The Court concludes that Defendants have met their burden of proffering a legitimate, non-discriminatory reason for Martinez' conduct so as to shift the burden back to the Plaintiffs.

### C. *Non-Discriminatory Purpose as a Pre-text*

Accepting Martinez's claim of a mistake as a legitimate non-discriminatory purpose, Plaintiffs must show that the non-discriminatory purpose was merely a pretext for discrimination. *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Here, there is a material dispute as to whether Martinez's actions were a mistake. Martinez states that the normal practice was apply the discount if military members asked for it and, conversely, not apply the discount if they did not. *Martinez Dep.* at 38:15–39:4, Dkt. 33-4. Further, she states that if Plaintiffs did not receive the discount it was

because they did not ask for it. *Id.* at 40:1–41:5. However, the other Guardsmen indicated that they were given the discount without having asked for it. *Monroe Dec.* ¶¶ 5–7, Dkt. 36-14. Thus, because it is not the Court's place to determine the credibility of witnesses, the issue is precluded from summary judgment. Accordingly, the Court will deny Defendants' Motion for Summary Judgment on this claim.

**2.      § 2000a Claims**

Plaintiffs may establish a prima facie case under § 2000a by establishing four elements: (1) they are members of a protected class; (2) they attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) were denied those benefits and enjoyment; and (4) such services were available to similarly situated persons outside the protected class who received full benefits or enjoyment, or were treated better. The prima facie case under § 2000a is substantially similar to § 1981 case and for the same reasons, the Court finds that there is enough evidence to establish a prima facie case under § 2000a.

**3.      Liability of YUM, Taco Bell, and ES-O-ES for Martinez's Conduct**

*A.      Liability of ES-O-EN under* **Respondeat Superior**

Plaintiffs have not advanced an independent liability theory against ES-O-EN and must therefore rely on a theory of *respondeat superior* to hold the company liable for the conduct of Martinez. Defendants argue that *respondeat superior* does not apply to claims under § 1981 or § 2000a, and that even if it did, the doctrine is limited to actions by supervisory employees. The Court disagrees.

Under *respondeat superior*, an employer is liable for the negligent acts or omissions of any employee acting within the course and scope of her employment. Restatement (Third) of Agency § 2.04 (2006). This is a form of vicarious liability and is not based on any improper action by the employer. *Id.*

The determination of when a retail or restaurant employer can be held responsible under § 1981 and § 2000a for the acts of an employee has not been resolved by the Supreme Court or Ninth Circuit. The Ninth Circuit has applied *respondeat superior* principles in the employment discrimination context to hold an employer liable for a supervisor's violations of § 1981 and § 2000a. *See Miller v. Bank of Am.,* 600 F.2d 211, 213 (9th Cir. 1979). The Fifth Circuit has extended its application to the public accommodation context. *See Arguello v Conoco*, 207 F.3d 803 (5th Cir. 2000) (applying general agency principles to determine whether an employer is subject to liability for the torts committed by his employee in the context of a public accommodations discrimination suit under 42 U.S.C. § 2000a and 42 U.S.C. § 1981).

In the employment discrimination context, courts generally limit the application of *respondeat superior* to Title VII claims (1) involving supervisory employees, or (2) where employers had prior notice of the offending conduct. *See, e.g., Miller v. Bank of Am.*, 600 F.2d at 213 ("The usual rule, that an employer is liable for the torts of its employees, acting in the course of their employment, seems to us to be just as appropriate here as in other cases, *at least where, as here, the actor is the supervisor of the wronged employee*.") (emphasis added); *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d

1257, 1263 (10th Cir. 1995) ("We have held that an employer is liable under both Title

VII and section 1981 *where the action complained of was that of a supervisor, authorized*

*to hire, fire, discipline or promote, or at least to participate in or recommend such*

*actions*, even though what the supervisor is said to have done violates company policy.")

(emphasis added).

However, the Fifth Circuit in *Arguello* laid out a strong case for applying

*respondeat superior* to non-supervisory employees in a public accommodation setting:

> In a public accommodation case such as this, the supervisory status of the
> discriminating employee is much less relevant than it is in an employment
> discrimination case . . . Also, in a public accommodation case under § 1981, a
> rule that only actions by supervisors are imputed to the employer would result, in
> most cases, in a no liability rule. Unlike the employment context it is rare that in a
> public accommodation setting a consumer will be mistreated by a manager or
> supervisor. Most consumer encounters are between consumers and clerks who are
> non-supervisory employees.

207 F.3d at 810. The Eighth Circuit has cited *Arguello* approvingly in suggesting that

retailers may be held liable for the discriminatory actions of their nonsupervisory

employees. *Green v. Dillard's, Inc.*, 483 F.3d 533, 540 (8th Cir. 2007) (holding the retail

employer *directly* liable under § 1981 because it engaged in negligent or reckless conduct

in supervising its sales staff, but noting the "significant number of summary judgments

denied or final judgments upheld against retailers based on actions of their

*nonsupervisory* employees") (emphasis added). Several district courts have also cited

*Arguello* approvingly. *See, e.g.*, *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 860 (N.D.

Iowa 2004) ("The court agrees with the logic employed by the Fifth Circuit Court of

Appeals in [*Arguello*] in rejecting the application of the *Ellerth/Faragher* restrictions on

employer liability in employment cases to a consumer action under § 1981”);*Williams v.*
*Ramada Inn*, No. CIV.A. 3:2006-217, 2007 WL 2253564, at *5 (W.D. Pa. Aug. 3, 2007)
(citing *Arguello* approvingly); *see also Green v. Dillard’s, Inc.*, 483 F.3d 533, 540 (8th
Cir. 2007) (collecting cases in which retailers were held vicariously liable for the actions
of their nonsupervisory employees)*; Hampton v. Dillard Dep’t Stores, Inc.*, 247 F.3d
1091 (10th Cir. 2001) (holding Dillard’s liable for conduct involving a Dillard’s
“fragrance consultant” and security guard, arguably low-level employees).

  The Court is persuaded by the logic of *Arguello*. To carry over the restrictions on
vicarious liability from the employment context would create an enormous loophole in
the § 1981 and § 2000a protections afforded to consumers. Moreover, *Arguello* represents
an unremarkable application of *respondeat superior*, which ordinarily subjects employers
to liability for the actions of any employees. Finally, the justification for narrowing the
application of *respondeat superior* in employment cases is inapplicable here. In the
employment context,

> [w]hen a person with supervisory authority discriminates in the terms and
> conditions of subordinates’ employment, his actions necessarily draw upon his
> superior position over the people who report to him, or those under them, whereas
> an employee generally cannot check a supervisor’s abusive conduct the same way
> that she might deal with abuse from a co-worker. When a fellow employee
> harasses, the victim can walk away or tell the offender where to go, but it may be
> difficult to offer such responses to a supervisor, whose “power to supervise—
> [which may be]—to hire and fire, and to set work schedules and pay rates—does
> not disappear” . . . when he chooses to harass through insults and offensive
> gestures rather than directly with threats of firing or promises of promotion.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 803 (1998). However, employees enjoy a
position of authority over customers comparable to that of supervisors over their

subordinates. Therefore, the supervisory status of the discriminating employee is much less relevant in a consumer encounter.

For these reasons, the Court concludes that *respondeat superior* is applicable to § 1981 and § 2000a claims, and that supervisory involvement is not necessary in consumer actions under these statutes. Plaintiffs may properly assert their § 1981 and § 2000a claims against ES-O-EN on a theory of *respondeat superior.*

### B. Liability of Taco Bell and YUM

Defendants argue that Taco Bell and YUM cannot be held liable for Martinez's tortious conduct for two reasons. First, the franchisor-franchisee relationship does not give rise to vicarious liability absent control over the conduct giving rising to direct liability. Second, there is was no apparent agency relationship that might otherwise establish vicarious liability. The Court agrees.

### (i) Franchisor Liability

"A franchisor may be held vicariously liable for the tortious conduct of its franchisee only if the franchisor has control or a right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm." *Ketterling v. Burger King Corp.*, 272 P.3d 527, 533 (Idaho 2012) (internal quotation marks omitted) (quoting 62B Am. Jur. 2d Private Franchise Contracts § 298 (2011)). General franchise agreements alone are usually not enough to establish control giving rise to liability. *See, e.g.*, *Arguello v. Conoco, Inc.*, 207 F.3d 803, 808 (5th Cir. 2000) ("The language of the [franchise agreement], while offering guidelines to the

Conoco-branded stores, does not establish that Conoco, Inc. has any participation in the daily operations of the branded stores nor that Conoco, Inc. participates in making personnel decisions."); *Ketterling*, 272 P.3d at 533 (explaining that requirement to follow an operation manual to clear snow does not establish sufficient control).

In *Ketterling*, for example, the Idaho Supreme Court relied on a franchise operations manual to determine that the franchisor had insufficient control over the franchisee's daily operation that caused the customer to slip on snow and ice outside of the restaurant. *Id.* Although the manual directed the franchisee to "clear snow and ice from the premises as soon as possible," it also stated that a franchisee is "an independent owner and operator of the restaurant who is responsible for day-to-day operations of his/her business." *Id.*; *see also Perry v. Burger King Corp.*, 924 F. Supp. 548 (S.D.N.Y. 1996) (granting summary judgment to defendant where franchise agreement defined franchisee as an independent contractor and plaintiff presented no evidence that the franchisor had policies regarding franchisee employees).

Here, too, a franchise agreement governs the relationship between ES-O-EN and Taco Bell. The agreement provides that ES-O-EN is "an independent contractor and is not authorized to make any contract, agreement, commitment, warranty or representation on behalf of [Taco Bell]. ES-O-EN 'is not and shall not represent or hold itself out as, an agent, legal representative, joint venturer, partner, employee or servant' of [Taco Bell]." *Hansford Aff.* ¶ 5, Dkt. 33-8. In addition, the agreement states that ES-O-EN is responsible for all day-to-day operations of the Subject Restaurant and is the sole

employer of all employees who work at the subject restaurant. *Id.* ¶ 7. The undisputed record also establishes that neither YUM nor Taco Bell exercised any control over ES-O-EN's policies or practices with respect to the application of any discounts or the training or discipline of ES-O-EN's employees. *Id.* ¶¶ 8, 12; *Meister Aff.* ¶ 6, Dkt. 33-9. Taco Bell does not have a policy about the use of discounts nor has it ever issued any directives to franchisees regarding the use of discounts. *Hansford Aff.* ¶ 12, Dkt. 33-8.

Plaintiffs in this case do not offer any evidence to the contrary. Instead, they allege that portions of Hansford's affidavit are inadmissible under Federal Rule of Evidence 1002. Rule 1002 states, "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Plaintiffs argue that the original franchise agreement should be made available to prove the contents of the agreement. It is true that only admissible evidence may be considered in ruling on a motion for summary judgment. *See Orr,* 285 F.3d at 773; *see also* Fed. R. Civ. P. 56(e). However, for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. Here, the contents of the Franchise Agreement would most likely be admissible at trial in some form. Therefore, the Court can properly consider the document for purposes of the present motion.

The undisputed record establishes that neither Taco Bell nor YUM, as franchisors, had control or a right of control over the day-to-day operations of the Subject Restaurant, so as to give rise to vicarious liability. Defendants are entitled to summary judgment on this issue.

### (ii)  Apparent Authority

Plaintiffs also argue that Taco Bell and YUM may be held liable under a theory of apparent authority. Defendants argue that the doctrine of apparent authority should not be applied in in this context, as a matter of law, and even if it were, that Defendants exhibited no apparent authority under the circumstances.

Apparent authority exists "when the principal voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority." *Bailey v. Ness*, 708 P.2d 900, 902 (Idaho 1985). Apparent authority is not based on the words and conduct of the principal to the agent, but on the principal's words and conduct toward a third party." *Tri–Circle, Inc. v. Brugger Corp.*, 829 P.2d 540, 544–45 (Idaho Ct. App. 1992). "Consequently, apparent authority cannot arise from the acts and statements of the agent alone; it must be based upon the principal's words and conduct." *Landvik by Landvik v. Herbert*, 936 P.2d 697, 702 (Idaho Ct. App. 1997).

Plaintiffs contend that use of Taco Bell's trademarks and trade dress at the Subject Restaurant, and Taco Bell's failure to distinguish between franchisor and franchisee-owned restaurants in its advertising, created an apparent agency relationship between the franchisee and franchisor. The Court disagrees. Plaintiffs rely primarily on *Thomas v. Freeway Foods, Inc.*, 406 F. Supp. 2d 610 (M.D.N.C. 2005) in asserting that an apparent agency relationship existed. In that case, the court held that Freeway Foods, the franchisor of Waffle House, had apparent authority because the store lacked any

indicator, like a placard, to show that the franchisee was separate from the franchisor. *Id.* In contrast, here, the Subject Restaurant gave notice of the franchise arrangement. *See Meister Aff., Ex. B*, Dkt. 33-11. A placard next to the menu stated that the Subject Restaurant is owned and operated by ES-O-EN, a franchisee of Taco Bell. *Id.* Additionally, the *Thomas* court applied North Carolina agency law to the case, and clarified that the outcome would have been different had it applied Georgia law. *Id.*

Moreover, the majority of jurisdictions to have addressed the issue have concluded that uniform product branding and marketing across a franchise does not, by itself, create an objectively reasonable expectation that the franchisee functions as an agent of the franchisor. Some additional representation of control over the franchisee's day-to-day operations is ordinarily required. This is based, at least in part, on the observation that "[a]lmost everyone knows that chain outlets, whether restaurants, motels, hotels, resorts, or gas stations, are very often franchised rather than owned by the owner of the trademark that gives the chain its common identity in the marketplace." *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 562 (7th Cir. 2006). *See, e.g., Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1036 (8th Cir. 1998) (holding that permission to use franchisor's logos on employee's uniforms and on signs "does not clothe a franchisee with the apparent power to act on the franchisor's behalf in anything approaching a general way."); *Gonzalez v. Walgreens Co.*, 878 F.2d 560, 562 (1st Cir. 1989) (finding that the "bare use of the Walgreen label or logo . . . [was] [in]sufficient to raise a genuine issue of material fact that [the franchisor] clothed Walgreen–San Patricio with apparent authority."); *Cha v.*

*Hooters of Am., LLC*, 2013 WL 5532745, at *3 (E.D.N.Y. Sept. 30, 2013) (finding that prominent display of franchisor's trademark is not sufficient to establish apparent authority); *In re Motor Fuel Temperature Sales Practices Litig.*, 2012 WL 1536161, at *7 (D. Kan. Apr. 30, 2012) ("A franchisee's use of a franchisor's marks alone is insufficient to establish apparent agency."); *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 752 (W.D. Tenn. 2012); Allen v. Greenville Hotel Partners, Inc., 409 F. Supp. 2d 672, 680 (D.S.C. 2006) ("No South Carolina court has held that a franchisee's use of its franchisor's trademark or trade name and national advertisements concerning the trademark constitute a representation."); *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995) ("In today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business . . . .").

While these cases do not rely on Idaho law, and are therefore not precedential authority, their reasoning is persuasive.[2] In today's marketplace, "a person of ordinary prudence, conversant with the business usages and the nature of" chain businesses is not justified in believing that a franchisor has control over any substantial aspect of the day-to-day operations of any particular franchise, absent representations to the contrary. Moreover, to hold a franchisor liable because of nationwide advertising and branding

---

[2] To this Court's knowledge, the Idaho Supreme Court has never held a franchisor liable on a theory of apparent authority.

alone would result in virtually unlimited liability against franchisors for the conduct of franchisees.

Therefore, the Court concludes that Plaintiffs' reliance on uniform Taco Bell branding and advertising as a means for establishing apparent agency will not suffice. Plaintiffs have not pointed to any other actions by Taco Bell and YUM which manifested control over the Subject Restaurant. In fact, a placard placed inside the Subject Restaurant indicated that ES-O-EN, and not Taco Bell, owned and operated the restaurant, such that customers had notice they were not dealing with the Taco Bell corporation. More specifically, Plaintiffs point to no representations or acts by Taco Bell upon which they relied in believing that the corporation would ensure an environment free from discrimination in its franchise restaurants. *See, e.g.*, *Wilson v. United States,* 989 F.2d 953, 959 (8th Cir.1993) (finding no apparent agency when the plaintiffs failed to produce any evidence that the alleged principal manifested that it had control over the "specific activities" of the alleged agents). Accordingly, Plaintiffs have provided insufficient evidence to support their theory of apparent agency, and summary judgment must be granted on this issue.

**4.      Punitive Damages**

Defendants argue that the Court should dismiss the punitive damage claims because there is no malice or reckless indifference in this case. Damages for violation of § 1981 are awarded under 42 U.S.C. § 1988 (2012). Under § 1988, the Court will look to the common law because § 1981 lacks an explicit damages provision. *Woods v. Graphic*

*Commc'ns*, 925 F.2d 1195, 1204 (9th Cir. 1991). Section 1981 common law states that punitive damages may be awarded where a defendant has acted with "actual malice or reckless or wanton indifference." *See Cooke v. Orange Belt Dist. Council of Painters No. 48*, 529 F.2d 815, 820 (9th Cir. 1976); *see also Jones v. Reno Hilton Resort Corp.*, 889 F. Supp. 408, 411 (D. Nev. 1995).

Here, the Court believes that there is genuine dispute about Martinez's and Daley's mental states that preclude summary judgment. To rule on whether the actions taken by Martinez were malicious or reckless gets into the credibility and mental state of Martinez and Daley. Therefore, the Court will not grant summary judgement on the issue of punitive damages.

**5.       Evidentiary Issues**

>      ***A.       Defendants' SOF  paragraphs 3, 10, 11, 17, 18, 24, 32***

Plaintiffs object to paragraphs 3, 10, 11, 17, 19, 24, 32 of Defendants' Statement of Facts (SOF) because the record does not support the assertions. For the purposes of this motion, the Court need not decide whether these portions of the SOF are supported by the record as they were not relevant to the Court's analysis. While the Court relied on statements in the record that these paragraphs refer to, the overall conclusions made in these paragraphs were not relevant to the Court's analysis.

>      ***B.       Change Sheets and Paragraph 22 of Plaintiffs' SOF***

Defendants argue that the Court may not consider the change sheets supplied by Plaintiffs. The Court agrees. Federal Rule of Civil Procedure 30(e) permits a deponent to

make changes "in form or substance" following a deposition. Fed. R. Civ. P. 30(e). Under the sham affidavit rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins.Co.*, 952 F.3d 262, 266 (9th Cir. 1991). The Ninth Circuit has held that Rule 30(e) is to be used to make "corrective, and not contradictory, changes." *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1226 (9th Cir. 2005).

Here, Barber made four changes, each time changing "yes" to "no." *Pl. Obj.* at 5, Dkt. 36-18; *Barber Dep.* at 39:16, 66:12, 15, 67:5, Dkt. 33-7. Likewise, McKinnon made two relevant changes, changing a "sure" to a "no" and a "correct" to an "incorrect." *Pl. Obj.* at 5, Dkt. 36-18; *McKinnon Dep.* at 76:25, 117:9, Dkt. 33-6. The changes completely contradict the prior testimony in the deposition.

However, a statement of reasons explaining corrections may show that the alterations have a legitimate purpose. *Hambleton*, 397 F.3d at 1224–25 ("The absence of any stated reasons for the changes supports the magistrate judge's concern that the 'corrections' were not corrections at all, but rather purposeful rewrites tailored to manufacture an issue of material fact regarding Ballinger and to avoid a summary judgment ruling in his favor.").

Here, the explanation given by McKinnon is that he used the incorrect word. Barber's change sheet failed to explain several of the changes and stated "personal harm and financial" on another. Neither of these explanations is sufficient to demonstrate to the Court that the contradictory change was not for the purpose to create a genuine issue

of fact. In addition, Barber's change sheet is invalid because of his failure to sign it. Federal Rule of Civil Procedure 30(e) requires the deponent to "to sign a statement listing the changes and the reasons for making them." Therefore, the Court will not consider the changes to the deposition.

The changes to the declarations through the change sheets, as reasoned above, should not be considered. Nonetheless, in regards to Plaintiffs' SOF ¶ 22, the Court finds that financial damages likely did not occur in this case. Because the Plaintiffs would likely have received reimbursements through per diems, they likely would not have suffered financial damages. However, this does not preclude compensatory damages from being awarded in this case for other harms. *See, e.g.*, *Marsh v. Dig. Equip. Corp.*, 675 F. Supp. 1186 (D. Ariz. 1987) ("A prevailing plaintiff in a Section 1981 action may recover compensatory and punitive damages. Compensatory damages include . . . damages for suffering and emotional distress.").

### C. *The Remainder of Defendants' Evidentiary Objections*

The Court did not consider the following items of evidence (1) Austin Phillips declaration, (2) Paragraph 8 of the declarations of Monroe, Lewis, Emmons, and Phillips, and (3) paragraph 2 of McKinnon's declaration, and (4) paragraphs 4, 8, and 9 of McKinnon and Barber's declarations. Therefore, the objections are deemed moot.

### ORDER

**IT IS ORDERED:**

1.    Defendants' Motion for Summary Judgment (Dkt. 33) is **GRANTED** as to

       Defendants Taco Bell Corp. and YUM! Brands, Inc., **DENIED** as to

       Defendants Martinez and ES-O-EN, and **DENIED** as to Plaintiffs' punitive

       damages claim against the remaining defendants.

2.     Plaintiffs' Objections to the Evidence used for Summary Judgement (Dkt.

       36-18) is **DENIED** in part and **DEEMED MOOT** in part.

3.    Defendants' Objections to the Evidence used for Summary Judgement

       (Dkt. 36-18) is **GRANTED** in part and **DEEMED MOOT** in part.


DATED: August 24, 2017

B. Lynn Winmill
Chief Judge
United States District Court